**In re UNITED STATES of America.**

**United States of America, Petitioner,**

**v.**

**United States District Court for the Central District of California, Respondent,**

**Luis Chavez–Orozco, Real Party in Interest.**

**No. 02–71549.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2002.

Filed Jan. 21, 2003.

Michael Raphael, Assistant United States Attorney, Los Angeles, California, for the petitioner.

James Locklin, Assistant Federal Public Defender, Los Angeles, California, for the respondent and real party in interest.

Before NOONAN, BERZON, and TALLMAN, Circuit Judges.

## OPINION

NOONAN, Circuit Judge.

The United States petitions for a writ of mandamus reversing the United States District Court's orders (1) allowing the real party in interest, Luis Chavez–Orozco ("Chavez") to advance as a defense to a violation of 8 U.S.C. § 1326, illegal reentry after deportation, that he is a United States national, and adopting Chavez's proposed jury instructions giving a definition of national, and (2) bifurcating the trial so that the Government may not prove Chavez's earlier deportations in a first proceeding where the jury is to determine only whether Chavez qualifies as an alien illegally in the United States. As objective proof that he is a national, Chavez offers a withdrawn citizenship application from 1994 together with an Immigration and Naturalization Service ("INS") processing sheet, part of that application, signed by Chavez and bearing in part an oath of allegiance required for citizenship. Chavez's jury instructions contain the statutory definition of "national" as a person who owes "permanent allegiance" to the United States, but provide no guidance to the jury on how to determine whether or not a person owes "permanent allegiance" as a matter of law.

We hold that no reasonable jury could conclude Chavez is a national of the United States; the adopted jury instructions ask the jury to reach a factual conclusion without instructing the jury on the legal princi-ples by which the conclusion must be reached; and the district court erred in bifurcating the trial. The conditions necessary for us to issue the writ of mandamus have been met, and we issue the writ.

## FACTS

Luis Chavez–Orozco entered the United States for the first time in 1980 on an immigrant visa. At that time he was eight years old and came to the United States to live with his father, who had married a United States citizen. In 1994, Chavez applied for citizenship, having passed the English and Citizenship Examination required for naturalization. As part of the application process, Chavez was interviewed by the INS. At the time Chavez submitted his application, he was on probation for three years for a reckless driving offense. The INS informed Chavez that he was ineligible for naturalization until his probation expired in 1996. Chavez then asked to withdraw his application, and the INS granted his request without prejudice to any future application for naturalization.

Chavez did not reapply when his probation ended in 1996. He was convicted of possession of methamphetamine in 1998 and possession of cocaine in 1999. Chavez received a sixteen-month sentence on each conviction and was deported three times, in 1998, 1999 and 2000. In the 1998 proceeding, the immigration judge asked Chavez, "Are you a citizen or a national of the United States?" Chavez answered, "No."

Chavez reentered the United States after his deportation in 2002.

## PROCEEDINGS

In 2002, a federal grand jury indicted Chavez on one count of being an illegal alien found in the United States following deportation and conviction in violation of 8 U.S.C. § 1326. On May 13, 2002, the dis-

trict court ruled that Chavez could introduce evidence as to the circumstances of the withdrawal of his citizenship application. The district court also ruled that whether Chavez owed "permanent allegiance to the United States" was a question for the jury. The district court further ordered that the trial be bifurcated. In the first phase of the trial, the jury would consider only the question of whether Chavez was an alien found in the United States without the consent of the INS. In the second phase, if necessary, the jury would consider whether Chavez had been previously deported.

The district court accepted Chavez's proposed jury instructions, which read:

> The term "alien" means any person not a citizen or national of the United States. The term "national of the United States" means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States.

The district court rejected the United States' proposed jury instructions, which would have defined a national as "a person born in a United States territory," or in the alternative, an instruction stating that a person could not become a national unless he was either born in a United States territory or "has a pending application for United States citizenship."

This petition for mandamus followed. On May 30 the district court granted the Government's motion to stay the trial pending the outcome of the petition.

## ANALYSIS

 Chavez's entire defense—that he is a "national" of the United States—depends upon an oath of allegiance which was part of the application for seeking citizenship which he withdrew. We doubt that one could become a national by merely taking such an oath, but we need not decide that issue. We decide only that by withdrawing the application in which he may have sworn allegiance to the United States, Chavez effectively disavowed the entire application for citizenship. It is uncontested that Chavez came here as an alien.

■ It follows that the district court committed an error of law in committing to the jury the decision of Chavez's nationality. The court must instruct the jury as a matter of law that Chavez is not a national. It equally follows that there is no need to bifurcate Chavez's trial. The jury will decide whether Chavez is an alien who has returned after deportation.

■ The writ of mandamus must therefore issue as four of the five *Bauman* factors are met. *Bauman v. United States,* 557 F.2d 650, 654–55 (9th Cir.1977). The United States has no adequate means to obtain relief; it will be prejudiced if the nationality issue goes to the jury and the jury acquits on that basis; the error of law is clear; and the issue of law is new and important. *Id.*

The petition for a writ of mandamus is GRANTED.